**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DENNIS MOORE,<br><br>Plaintiff,<br><br>v.<br><br>WINDOW TO THE WORLD COMMUNICATIONS, INC.,<br><br>Defendant. | Case No. 26-cv-7125<br><br>Jury Demand |

## COMPLAINT

NOW COMES, Plaintiff, DENNIS MOORE, by and through his attorney, JEM LAW ADVOCATES, P.C., and for his Complaint at Law against Defendant, WINDOW TO THE WORLD COMMUNICATIONS, INC., states as follows:

## THE PARTIES

1. Plaintiff, Dennis Moore, is a natural person over the age of 18 years old who, at all relevant times, resided in Cook County, Illinois.

2. Defendant, Window to the World Communications, Inc., is a not-for-profit organization with its principal place of business and registered agent, Sandra Micek, located at 5400 N. St. Louis Ave., Chicago, IL 60625.

3. At all relevant times, Plaintiff was employed by Defendant as an "employee" within the meaning of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(4).

4. At all relevant times, Defendant was an "employer" within the meaning of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(5).

## JURISDICTION AND VENUE

5. Plaintiff brings this action for damages and equitable relief pursuant to the

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, as amended.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

7. Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391, as the parties reside and/or conduct business in this judicial district, and the events giving rise to the claims asserted herein also occurred in this judicial district.

## ADMINISTRATIVE PREREQUISITES

8. Plaintiff has fulfilled all conditions precedent to jurisdiction under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, as amended.

9. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), 440-2024-12555. *See* Exhibit A.

10. The EEOC issued its Determination and Notice of Rights on March 19, 2026. *See* Exhibit B.

11. Plaintiff filed this lawsuit within ninety days of Plaintiff's receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

12. On or about July 7, 1990, Plaintiff began working as a Program Host and Producer for WFMT, the classical-music radio station that is a subsidiary of Defendant, and for the next 34 years, except for a period from July 2014 to September 2015, was employed by Defendant.

13. On or about July 11, 2018, Plaintiff was offered and accepted the full-time position of Weekday Morning Program Host at WFMT.

14. As Weekday Morning Program Host, Plaintiff's responsibilities during the 6:00 – 10:00 a.m. weekday morning show included, among others, introducing and back-announcing music, reading spots (commercials and promotional announcements), selecting and preparing

music to be played, writing and delivering newscasts, and being responsible for technical components of the show.

15. On or about January 15, 2024, Plaintiff was diagnosed with Major Depressive Episode and Fatigue, resulting from insomnia.

16. Plaintiff's disabilities substantially limit major life activities including, but not limited to, his ability to sleep, concentrate, think, and communicate.

17. Despite Plaintiff's disabilities, he was qualified to perform the essential functions of his job with or without accommodation.

18. In or about March 2024, Plaintiff requested medical leave due to acute fatigue resulting from insomnia and exacerbation of depressive disorder.

19. On or about April 5, 2024, Defendant approved Plaintiff's medical leave through July 1, 2024, pursuant to the Family and Medical Leave Act and Defendant's short-term disability leave policy.

20. On or about June 3, 2024, Plaintiff contacted Kari Hurley, Defendant's Director of Human Resources, regarding documentation for requesting reasonable accommodation pursuant to the Americans with Disabilities Act.

21. On or about June 12, 2024, Ms. Hurley emailed Plaintiff the requisite paperwork.

22. On or about June 17, 2024, Plaintiff's physician faxed Defendant a medical certification requesting modification to Plaintiff's work schedule, specifically recommending an 8:00 a.m. or later start time for Plaintiff's workday.

23. On or about June 26, 2024, Plaintiff met with Roger Wight, WFMT Head of Programming and Operations, and Ms. Hurley regarding his requested accommodation.

24. During that meeting, Ms. Hurley told Plaintiff that Defendant had no positions available with an 8:00 a.m. or later start time. Neither Mr. Wight nor Ms. Hurley proposed any

other options for Plaintiff but to return to his position without accommodation.

25. As alternatives, Plaintiff suggested a combination of pre-recording and live hosting formats; shifting the morning program to 7:00 – 11:00 a.m.; or creating a new off-air programming position. Plaintiff memorialized these proposals in an email to Ms. Hurley and Mr. Wight later that day.

26. On or about June 26, 2024, Plaintiff spoke by phone with his immediate supervisor, Lisa Flynn, who told him that she considered his proposal to pre-record the early portion of the morning program to be reasonable.

27. Nonetheless, during a second meeting, on or about July 2, 2024, Mr. Wight rejected all of Plaintiff's proposals without discussion and asked Plaintiff to return to his position without any accommodation.

28. On or about July 4, 2024, Plaintiff emailed Mr. Wight asking that Ms. Flynn attend the next accommodation meeting because she was most familiar with the essential functions of Plaintiff's position and therefore best able to help identify reasonable accommodation. Defendant did not include Ms. Flynn in any accommodation meeting.

29. On or about July 5, 2024, via email, Plaintiff proposed a temporary accommodation of being assigned to any on-air shifts beginning after 8:00 a.m. on any day of the week to fill in for absent hosts.

30. On or about July 8, 2024, Mr. Wight rejected Plaintiff's proposed temporary accommodation without discussion and without offering any alternative.

31. On or about July 10, 2024, Plaintiff had an appointment with his physician to discuss other potential accommodation, including remote hosting, since, in or around 2021, after the COVID-19 shelter in place mandates had been lifted, Defendant permitted Kerry Frumkin, another radio program host, to continue remote hosting from home without any request for

medical accommodation.

32. Later that day, after the appointment, Plaintiff's physician faxed Defendant a revised medical certification recommending Plaintiff be permitted to remotely host the morning program live from his home for six months, and that marginal responsibilities be removed or modified.

33. That same evening, Plaintiff emailed Ms. Hurley and Mr. Wight reiterating his physician's proposal for remote live hosting, including removing the hourly newscasts and reporting of sports scores. Plaintiff noted in his email that the weekday morning program of another major-market classical-music radio station, New York City's WQXR, had been remotely live-hosted since 2020, with both the regular host and fill-in host routinely broadcasting the entire show from their respective homes. Plaintiff offered to purchase any additional equipment that might be needed to implement this accommodation. Plaintiff also asked whether Defendant had fully explored the possibility of other hosts agreeing to switch on-air shifts with Plaintiff, as he had discussed the same with more than one colleague who had expressed willingness to switch on-air shifts with him.

34. On or about July 11, 2024, during a third meeting, Mr. Wight rejected Plaintiff's July 10th accommodation proposal without offering any alternative.

35. Plaintiff then offered to remotely live-host the morning program in the existing format, with all customary newscasts and other current elements included. However, Mr. Wight immediately rejected that proposal, saying that he would "prefer" not to have the morning program hosted off-site.

36. In addition, at this meeting, Ms. Hurley stated that any requested accommodation lasting more than approximately two weeks would not be granted.

37. At this time, Ms. Hurley told Plaintiff that if he resigned and signed an

agreement, he would receive a "financial package" with the possibility of occasional part-time work.

38. On or about July 23, 2024, Plaintiff, via counsel, emailed Ms. Hurley to propose another potential accommodation, in which Plaintiff would pre-record the first hour of the morning program (6:00 – 7:00 a.m.) and then host the remaining three hours (7:00 – 10:00 a.m.) live from the WFMT studio. Prior to submitting this proposal to Ms. Hurley, on or about July 21, 2024, Plaintiff shared this proposed accommodation with his supervisor, Ms. Flynn, by phone, and she indicated that she considered it to be reasonable. Ms. Flynn conveyed the same to Mr. Wight.

39. Nonetheless, on or about July 29, 2024, Defendant rejected, via counsel, the July 23rd accommodation proposal.

40. On or about August 13, 2024, Plaintiff was terminated.

**COUNT I**

**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**FAILURE TO ACCOMMODATE**

41. Plaintiff realleges and incorporates all preceding paragraphs as if set forth fully herein.

42. Plaintiff is a qualified person with a disability.

43. Defendant was aware of Plaintiff's disability.

44. In June and July 2024, Plaintiff requested reasonable accommodation and presented several options, all of which Defendant rejected without meaningful discussion and without offering any alternative accommodation.

45. Defendant failed to engage meaningfully in the interactive process.

46. Defendant failed to provide Plaintiff with reasonable accommodation.

47. Defendant terminated Plaintiff after failing to provide Plaintiff with reasonable accommodation.

48. As a direct and proximate cause of Defendant's unlawful discrimination, Plaintiff suffered loss of wages and benefits, emotional distress, and irreparable damage to his career and professional reputation.

## CONCLUSION

WHEREFORE, Plaintiff, DENNIS MOORE, respectfully requests that this Honorable Court enter judgment in his favor and against the Defendant, WINDOW TO THE WORLD COMMUNICATIONS, INC., granting the following relief:

A. Actual damages;

B. Compensatory damages;

C. Punitive damages;

D. Costs, including attorney's fees; and

E. Such other relief as this Honorable Court deems just and equitable, or to which Plaintiff is entitled as a matter of law.

Respectfully submitted,

JEM Law Advocates, P.C.

By: /s/ TiShaunda McPherson
TiShaunda McPherson

TiShaunda McPherson (ARDC No. 6289826)
JEM Law Advocates, P.C.
Attorney for Plaintiff
211 W Wacker Drive, Suite 1400
Chicago, IL 60606
(312) 883-5235
TiShaunda.McPherson@jemlawadvocates.com