**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DENNIS MOORE,<br><br>Plaintiff,<br><br>v.<br><br>Window To The World Communications, Inc.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 26-cv-7125<br><br>Honorable Judge April M. Perry<br>Magistrate Judge Gabriel A. Fuentes<br><br>Jury Demand |

**DEFENDANT'S ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendant Window To The World Communications, Inc., by and through its attorneys Franczek P.C., hereby answers Plaintiff's Complaint as follows:

**THE PARTIES**

1. Plaintiff, Dennis Moore, is a natural person over the age of 18 years old who, at all relevant times, resided in Cook County, Illinois.

**Answer:**

Defendant admits the allegations in Paragraph 1.

2. Defendant, Window to the World Communications, Inc., is a not-for-profit organization with its principal place of business and registered agent, Sandra Micek, located at 5400 N. St. Louis Ave., Chicago, IL 60625.

**Answer:**

Defendant admits the allegations in Paragraph 2.

3. At all relevant times, Plaintiff was employed by Defendant as an "employee" within the meaning of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(4).

**Answer:**

Defendant admits that Plaintiff was employed by Defendant from on or about July 3, 1990 until on or about July 18, 2014 and from on or about September 24, 2015 until on or about July 23,

2024 and that he was an employee within the meaning of the ADA but denies all remaining allegations in Paragraph 3.

4. At all relevant times, Defendant was an "employer" within the meaning of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111(5).

**Answer:**

Defendant admits that it is an employer within the meaning of the ADA.

## JURISDICTION AND VENUE

5. Plaintiff brings this action for damages and equitable relief pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, as amended.

**Answer:**

Defendant admits that Plaintiff seeks damages and equitable relief but denies that it has violated the ADA and that Plaintiff is entitled to any relief under the ADA.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

**Answer:**

Defendant admits the allegations in Paragraph 6.

7. Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391, as the parties reside and/or conduct business in this judicial district, and the events giving rise to the claims asserted herein also occurred in this judicial district.

**Answer:**

Defendant admits that venue is proper in this judicial district and division but denies the factual allegations underlying Plaintiff's claims and therefore denies the remaining allegations in Paragraph 7.

## ADMINISTRATIVE PREREQUISITES

8. Plaintiff has fulfilled all conditions precedent to jurisdiction under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, as amended.

**Answer:**

Upon information and belief, Defendant admits the allegations in Paragraph 8.

9. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), 440-2024-12555. *See* Exhibit A.

**Answer:**

Defendant admits that Plaintiff filed the Charge of Discrimination that is attached to his Complaint as Exhibit A but denies the substantive allegations in that Charge.

10. The EEOC issued its Determination and Notice of Rights on March 19, 2026. *See* Exhibit B.

**Answer:**

Defendant admits the allegations in Paragraph 10.

11. Plaintiff filed this lawsuit within ninety days of Plaintiff's receipt of the Notice of Right to Sue.

**Answer:**

Defendant admits the allegations in Paragraph 11.

## STATEMENT OF FACTS

12. On or about July 7, 1990, Plaintiff began working as a Program Host and Producer for WFMT, the classical-music radio station that is a subsidiary of Defendant, and for the next 34 years, except for a period from July 2014 to September 2015, was employed by Defendant.

**Answer:**

Defendant admits the allegations of Paragraph 12 except the allegation that WFMT is a subsidiary of Defendant. WFMT is a radio station operated by Defendant.

13. On or about July 11, 2018, Plaintiff was offered and accepted the full-time position of Weekday Morning Program Host at WFMT.

**Answer:**

Defendant admits the allegations of Paragraph 13.

14. As Weekday Morning Program Host, Plaintiff's responsibilities during the 6:00 – 10:00 a.m. weekday morning show included, among others, introducing and back-announcing music, reading spots (commercials and promotional announcements), selecting and preparing music to be played, writing and delivering newscasts, and being responsible for technical components of the show.

**Answer:**

Defendant admits that Paragraph 14 accurately describes some of Plaintiff's responsibilities as morning program host but denies that Paragraph 14 contains an exhaustive list of Plaintiff's responsibilities as morning program host.

15. On or about January 15, 2024, Plaintiff was diagnosed with Major Depressive Episode and Fatigue, resulting from insomnia.

**Answer:**

Defendant is without sufficient information to form a belief as to the truth of the allegations in Paragraph 15 and therefore denies them. Answering further, Defendant states that on or about March 4, 2024, Plaintiff notified Defendant's Human Resources personnel that he was requesting a leave of absence to "recover from work-related stress and burnout"; no mention was made of major depressive episode, fatigue, or insomnia.

16. Plaintiff's disabilities substantially limit major life activities including, but not limited to, his ability to sleep, concentrate, think, and communicate.

**Answer:**

Defendant is without sufficient information to form a belief as to the truth of the allegations in Paragraph 16 and therefore denies them.

17. Despite Plaintiff's disabilities, he was qualified to perform the essential functions of his job with or without accommodation.

**Answer:**

Defendant denies the allegations of Paragraph 17.

18. In or about March 2024, Plaintiff requested medical leave due to acute fatigue

resulting from insomnia and exacerbation of depressive disorder.

**Answer:**

Defendant denies the allegations in Paragraph 18. On or about March 4, 2024, Plaintiff notified Defendant's Human Resources personnel that he was requesting a leave of absence to "recover from work-related stress and burnout"; no mention was made of a depressive disorder or insomnia.

19. On or about April 5, 2024, Defendant approved Plaintiff's medical leave through July 1, 2024, pursuant to the Family and Medical Leave Act and Defendant's short-term disability leave policy.

**Answer:**

Defendant admits that it approved an FMLA leave for Plaintiff through July 1, 2024 but denies all remaining allegations in Paragraph 19. Answering further, Defendant states that Plaintiff was approved for short-term disability benefits through April 26, 2024. On or about May 16, 2024, Plaintiff requested short-term disability leave for a different medical issue, and short-term disability benefits for that issue were approved for the period April 27, 2024 to June 28, 2024.

20. On or about June 3, 2024, Plaintiff contacted Kari Hurley, Defendant's Director of Human Resources, regarding documentation for requesting reasonable accommodation pursuant to the Americans with Disabilities Act.

**Answer:**

Defendant admits the allegations in Paragraph 20.

21. On or about June 12, 2024, Ms. Hurley emailed Plaintiff the requisite paperwork.

**Answer:**

Defendant admits the allegations in Paragraph 21.

22. On or about June 17, 2024, Plaintiff's physician faxed Defendant a medical certification requesting modification to Plaintiff's work schedule, specifically recommending an 8:00 a.m. or later start time for Plaintiff's workday.

**Answer:**

Defendant admits the allegations in Paragraph 22.

23. On or about June 26, 2024, Plaintiff met with Roger Wight, WFMT Head of Programming and Operations, and Ms. Hurley regarding his requested accommodation.

**Answer:**

Defendant admits the allegations in Paragraph 23.

24. During that meeting, Ms. Hurley told Plaintiff that Defendant had no positions available with an 8:00 a.m. or later start time. Neither Mr. Wight nor Ms. Hurley proposed any other options for Plaintiff but to return to his position without accommodation.

**Answer:**

Defendant denies the allegations in Paragraph 24. Answering further, Defendant states that Ms. Hurley advised Plaintiff that WFMT did not have another on-air shift for him consistent with an 8am or later start time, nor was there full-time off-air work available. Ms. Hurley and Mr. Wight also told Plaintiff that his morning shift position remained open to him and that the station was willing to consider other possible accommodations.

25. As alternatives, Plaintiff suggested a combination of pre-recording and live hosting formats; shifting the morning program to 7:00 – 11:00 a.m.; or creating a new off-air programming position. Plaintiff memorialized these proposals in an email to Ms. Hurley and Mr. Wight later that day.

**Answer:**

Defendant admits that Plaintiff made the suggestions described in Paragraph 25 but denies that those suggestions were supported by medical advice from Plaintiff's health care provider.

26. On or about June 26, 2024, Plaintiff spoke by phone with his immediate supervisor, Lisa Flynn, who told him that she considered his proposal to pre-record the early portion of the morning program to be reasonable.

**Answer:**

Upon information and belief, Defendant admits that Plaintiff and employee Lisa Flynn, who at the time held the role of Lead Host, spoke by phone on June 26 and that Ms. Flynn may have said

that pre-recording the early portion of the morning program was reasonable but denies all remaining allegations in Paragraph 26. Answering further, Defendant states that programming decisions, including the staffing of programming, were not within Ms. Flynn's job responsibilities as Lead Host, nor did she have responsibility for making accommodation decisions on behalf of Defendant.

27. Nonetheless, during a second meeting, on or about July 2, 2024, Mr. Wight rejected all of Plaintiff's proposals without discussion and asked Plaintiff to return to his position without any accommodation.

**Answer:**

Defendant admits that Plaintiff, Mr. Wight, and Ms. Hurley spoke again by phone on July 2 and that Plaintiff's suggestions were not approved but denies all remaining allegations in Paragraph 27.

28. On or about July 4, 2024, Plaintiff emailed Mr. Wight asking that Ms. Flynn attend the next accommodation meeting because she was most familiar with the essential functions of Plaintiff's position and therefore best able to help identify reasonable accommodation. Defendant did not include Ms. Flynn in any accommodation meeting.

**Answer:**

Defendant admits that Plaintiff emailed Mr. Wight on or about July 4, 2024; that in that email, Plaintiff stated that he was copying Ms. Flynn because Mr. Wight brought up scheduling issues; and that Plaintiff asked that Ms. Flynn be present at their next meeting; but denies all remaining allegations in Paragraph 28.

29. On or about July 5, 2024, via email, Plaintiff proposed a temporary accommodation of being assigned to any on-air shifts beginning after 8:00 a.m. on any day of the week to fill in for absent hosts.

**Answer:**

Defendant admits the allegations in Paragraph 29.

30. On or about July 8, 2024, Mr. Wight rejected Plaintiff's proposed temporary accommodation without discussion and without offering any alternative.

**<u>Answer</u>:**

Defendant admits that on July 8, 2024, Mr. Wight sent an email responding to Plaintiff's July 5 proposal but denies the remaining allegations in Paragraph 30 to the extent they differ from what is stated in the email.

31. On or about July 10, 2024, Plaintiff had an appointment with his physician to discuss other potential accommodation, including remote hosting, since, in or around 2021, after the COVID-19 shelter in place mandates had been lifted, Defendant permitted Kerry Frumkin, another radio program host, to continue remote hosting from home without any request for medical accommodation.

**<u>Answer</u>:**

Defendant is without sufficient information to form a belief as to the truth of the allegations about Plaintiff having an appointment with his physician on July 10, 2024 and what may have been discussed during that meeting and therefore denies them. Defendant denies all remaining allegations in Paragraph 31.

32. Later that day, after the appointment, Plaintiff's physician faxed Defendant a revised medical certification recommending Plaintiff be permitted to remotely host the morning program live from his home for six months, and that marginal responsibilities be removed or modified.

**<u>Answer</u>:**

Defendant admits that it received a second ADA accommodation form from Plaintiff's physician on July 10, 2024 but denies the remaining allegations in Paragraph 32 to the extent that they do not accurately represent what was stated in that form. In the second accommodation form, Plaintiff's physician stated that Plaintiff's medical issues "make it extremely difficult for [Plaintiff] to perform his on-air hosting duties effectively. The same is true for his off-air duties." In answer to the question as to what adjustments to Plaintiff's job responsibilities would enable Plaintiff to perform the essential functions of his job, the physician stated that if Plaintiff were permitted to work from home, he could start work as early as 5:15am to prepare for the 6am to 10am program. The doctor further

stated that Defendant should "[m]ake all reasonable efforts to make [Mr. Moore's] air shift as simple and streamlined as possible, to decrease unnecessary stress" and should "[m]odify or remove marginal job functions".

33. That same evening, Plaintiff emailed Ms. Hurley and Mr. Wight reiterating his physician's proposal for remote live hosting, including removing the hourly newscasts and reporting of sports scores. Plaintiff noted in his email that the weekday morning program of another major-market classical-music radio station, New York City's WQXR, had been remotely live-hosted since 2020, with both the regular host and fill-in host routinely broadcasting the entire show from their respective homes. Plaintiff offered to purchase any additional equipment that might be needed to implement this accommodation. Plaintiff also asked whether Defendant had fully explored the possibility of other hosts agreeing to switch on-air shifts with Plaintiff, as he had discussed the same with more than one colleague who had expressed willingness to switch on-air shifts with him.

**Answer:**

Defendant admits that Plaintiff sent an email on July 10, 2024 containing Plaintiff's own proposal to host the morning program remotely from his home and also asked whether Defendant had "fully explored" the option of asking each of the other full-time hosts whether they might be willing to move to a different shift but denies all remaining allegations in Paragraph 33, including the allegation that the proposal described in Paragraph 33 came from Plaintiff's physician.

34. On or about July 11, 2024, during a third meeting, Mr. Wight rejected Plaintiff's July 10th accommodation proposal without offering any alternative.

**Answer:**

Defendant admits that during a meeting on July 11, 2024, Mr. Wight rejected a proposal by Plaintiff to host the morning program live from his home because there were technical risks and that Defendant did not offer an alternative to Plaintiff's proposal during the meeting. Defendant denies all remaining allegations in Paragraph 34.

35. Plaintiff then offered to remotely live-host the morning program in the existing format, with all customary newscasts and other current elements included. However, Mr. Wight immediately rejected that proposal, saying that he would "prefer" not to have the morning program hosted off-site.

**Answer:**

Defendant admits the allegations in Paragraph 35. Answering further, Defendant states that Plaintiff's proposal to host the morning program from his home would have created risks of broadcast interruption for which Defendant would be unable to control.

36. In addition, at this meeting, Ms. Hurley stated that any requested accommodation lasting more than approximately two weeks would not be granted.

**Answer:**

Defendant denies the allegations in Paragraph 36.

37. At this time, Ms. Hurley told Plaintiff that if he resigned and signed an agreement, he would receive a "financial package" with the possibility of occasional part-time work.

**Answer:**

Defendant admits that during a call on July 11, Ms. Hurley presented Plaintiff with the voluntary option of resigning and receiving a financial package that would enable him to transition to occasional part-time work as such work became available but denies any allegation or insinuation that Plaintiff was forced to resign.

38. On or about July 23, 2024, Plaintiff, via counsel, emailed Ms. Hurley to propose another potential accommodation, in which Plaintiff would pre-record the first hour of the morning program (6:00 – 7:00 a.m.) and then host the remaining three hours (7:00 – 10:00 a.m.) live from the WFMT studio. Prior to submitting this proposal to Ms. Hurley, on or about July 21, 2024, Plaintiff shared this proposed accommodation with his supervisor, Ms. Flynn, by phone, and she indicated that she considered it to be reasonable. Ms. Flynn conveyed the same to Mr. Wight.

**Answer:**

In answer to the first sentence of Paragraph 38, Defendant admits that on July 23, 2024, a lawyer named Bryan Wood emailed Ms. Hurley a letter proposing a number of substantive job modifications, including pre-recording the first hour of the morning program, which includes weather and news, the day before; delaying the morning program's hourly newscasts by one hour; and performing music

programming work each afternoon/evening remotely from home. Answering further, Defendant states that these requests were not supported by documentation from Plaintiff's physician.

In answer to the second sentence of Paragraph 38, Defendant is without sufficient information to form a belief as to whether Plaintiff shared the modifications identified in Attorney Wood's letter with Ms. Flynn and therefore denies them.

In answer to the third sentence of Paragraph 38, Defendant admits that Ms. Flynn conveyed to Mr. Wight her opinion that what Plaintiff was requesting was reasonable but denies all remaining allegations in that sentence.

39. Nonetheless, on or about July 29, 2024, Defendant rejected, via counsel, the July 23rd accommodation proposal.

**<u>Answer</u>:**

Defendant admits that via letter dated July 29, 2024 from its outside counsel, it rejected the job modifications outlined in Attorney Wood's letter. Answering further, Defendant states that the July 29 letter to Attorney Wood stated, among other things, that the requested modifications were not supported by medical advice; that the reformatting of the morning program in the manner that Attorney Wood proposed would fundamentally transform both the program and Plaintiff's role; and that there was no role that aligned with the modifications that Attorney Wood proposed available for Plaintiff to take. The July 29 letter further stated that Plaintiff's position remained open to him but that he would need to make a decision by August 5. That date was extended until August 13.

40. On or about August 13, 2024, Plaintiff was terminated.

**<u>Answer</u>:**

Defendant denies the allegations in Paragraph 40. Answering further, Defendant states that Plaintiff advised Human Resources that he was not accepting a separation package on August 13.

## COUNT I

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT FAILURE TO ACCOMMODATE

41. Plaintiff realleges and incorporates all preceding paragraphs as if set forth fully herein.

**Answer:**

Defendant incorporates by reference its Answers to Paragraphs 1 through 40, inclusive, as though fully set forth herein.

42. Plaintiff is a qualified person with a disability.

**Answer:**

Defendant denies the allegations in Paragraph 42.

43. Defendant was aware of Plaintiff's disability.

**Answer:**

Defendant admits that it had limited information about Plaintiff's medical condition as provided by Plaintiff and Plaintiff's health care provider but denies all remaining allegations in Paragraph 43.

44. In June and July 2024, Plaintiff requested reasonable accommodation and presented several options, all of which Defendant rejected without meaningful discussion and without offering any alternative accommodation.

**Answer:**

Defendant admits that Plaintiff requested various changes to his job duties and work schedule purportedly due to his medical condition but denies all remaining allegations in Paragraph 44. Answering further, Defendant states that it had many discussions with Plaintiff about his requested job modifications and that some of Plaintiff's requested modifications were not supported by the medical advice from Plaintiff's position.

45. Defendant failed to engage meaningfully in the interactive process.

**Answer:**

Defendant denies the allegations in Paragraph 45.

46. Defendant failed to provide Plaintiff with reasonable accommodation.

**Answer:**

Defendant denies the allegations in Paragraph 46.

47. Defendant terminated Plaintiff after failing to provide Plaintiff with reasonable accommodation.

**Answer:**

Defendant denies the allegations in Paragraph 47.

48. As a direct and proximate cause of Defendant's unlawful discrimination, Plaintiff suffered loss of wages and benefits, emotional distress, and irreparable damage to his career and professional reputation.

**Answer:**

Defendant denies the allegations in Paragraph 48.

## CONCLUSION

Wherefore, Plaintiff, Dennis Moore, respectfully requests that this Honorable Court enter judgment in his favor and against the Defendant, Window To The World Communications, Inc., granting the following relief:

A. Actual damages;

B. Compensatory damages;

C. Punitive damages;

D. Costs, including attorney's fees; and

E. Such other relief as this Honorable Court deems just and equitable, or to which Plaintiff is entitled as a matter of law.

**<u>Answer</u>:**

Defendant denies that Plaintiff is entitled to any of the relief requested in his Complaint.

## <u>AFFIRMATIVE DEFENSES</u>

1. The job modifications sought by Plaintiff would have imposed an undue hardship on Defendant's operations and would have been unreasonable as a matter of law.

2. At the times material to the Complaint, Plaintiff was not able to perform the essential functions of his position, with or without reasonable accommodation, and was not a qualified individual with a disability entitled to accommodation under the ADA.

3. All actions taken with respect to Plaintiff's employment, including the termination of his employment, were taken for legitimate, non-discriminatory reasons and in the good-faith exercise of Defendant's business judgment.

4. Defendant would have taken the same actions with respect to Plaintiff's employment regardless of his alleged disability or any protected activity.

5. Defendant denies that it violated any federal or state law and specifically denies that any alleged violations were willful.

6. Defendant states that any acts or omissions alleged by Plaintiff that give rise to this action were reasonable and not undertaken with reckless disregard to whether such acts or omissions violated federal or state law.

7. Defendant at all times acted in good faith and had reasonable grounds for believing that its alleged actions and omissions were in compliance with federal and state law. Accordingly, no punitive damages or penalties should be awarded because the alleged actions or omissions were undertaken in good faith, without malice or intent to injury Plaintiff, and do not constitute willful violations.

8. To the extent Plaintiff seeks to recover lost income from Defendant, upon information and belief, Plaintiff has failed to mitigate his damages by, among other things, failing to make reasonable efforts to secure alternative sources of income.

9. Alternatively, to the extent Plaintiff has mitigated his damages, any damages awarded to Plaintiff must be reduced by the amount of Plaintiff's substitute income including but not limited to earnings from alternative employment

10. To the extent that the adverse actions alleged in the Plaintiff's Complaint are not like or reasonably related to those alleged in his EEOC Charge, they must be dismissed.

Respectfully submitted,

WINDOWS TO THE WORLD
COMMUNICATIONS, INC.

By: /s/ Tracey L. Truesdale
One of Its Attorneys

Tracey L. Truesdale (ARDC No. 6207891)
tlt@franczek.com
Caroline K. Kane (ARDC No. 6324144)
ckk@franczek.com
Lindsay A. Hill (ARDC No. 6342145)
lah@franczek.com
Franczek P.C.
300 South Wacker Drive
Suite 3400
Chicago, IL 60606
(312) 986-0300

Dated: September 8, 2026

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that she caused a true and correct copy of the foregoing **DEFENDANT'S ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES** to be filed with the Clerk of the Court using the CM ECF Filing System which will electronically serve a copy upon the following counsel of record on this 8th day of September, 2026:

TiShaunda McPherson (ARDC No. 6289826)
JEM Law Advocates, P.C.
Attorney for Plaintiff
211 W Wacker Drive, Suite 1400
Chicago, IL 60606
(312) 883-5235
TiShaunda.McPherson@jemlawadvocates.com

/s/ Tracey L. Truesdale
tlt@franczek.com